UNITED STATES of America,
Plaintiff–Appellee,

v.

Alfonso HIDALGO, Defendant–Appellant.

No. 93–8009.

United States Court of Appeals,
Eleventh Circuit.

Nov. 29, 1993.

Donald Samuel, Garland & Samuel, P.C., Atlanta, GA, for defendant-appellant.

Janis Gordon, Asst. U.S. Atty., Atlanta, GA, for plaintiff-appellee.

Before TJOFLAT, Chief Judge, EDMONDSON and CARNES, Circuit Judges.

CARNES, Circuit Judge:

Alfonso Hidalgo pled guilty to seven counts of a twenty-six count indictment charging him with distribution of cocaine and related offenses. Pursuant to Fed.R.Crim.P. 11(a)(2), he reserved his right to appeal from the district court's denial of his motion to suppress evidence seized by police officers during a consent search of his residence in Duluth, Georgia. This is that appeal.[1]

Hidalgo contends: 1) that introduction of evidence from a search based on consent obtained after invocation of the right to remain silent violates the Fifth Amendment privilege against self-incrimination; 2) that introduction of evidence from a search based upon consent obtained after indictment and without the advice of counsel violates the Sixth Amendment right to counsel; 3) that the search conducted in this case exceeded the scope of his consent; and 4) that his consent to search was the product of undue coercion. For reasons that follow, we reject each of Hidalgo's contentions and affirm his conviction.

## I. BACKGROUND

At 6:30 a.m. on November 13, 1991, officers of the Gwinnett County Police Department arrested Hidalgo at his residence in Duluth, Georgia. With Hidalgo's consent, the officers searched the premises and seized numerous files containing canceled checks, bank records, disbursement and expenditure records, tax records, and other documents. Hidalgo moved to suppress the evidence seized in the search, and a federal magistrate judge held a hearing on that motion. At the

hearing, Mike Jenkins and Manuel Perez, narcotics investigators employed by Gwinnett County, testified about the events surrounding Hidalgo's arrest and his consent to the search. Hidalgo and his wife testified about the same events. The testimony established that a SWAT team made the initial entry to Hidalgo's residence, woke the Hidalgos, and held them on the floor at gunpoint until Jenkins and Perez arrived moments later. Jenkins introduced himself and Perez to Hidalgo, advised Hidalgo that he was under arrest, and determined that Hidalgo's *Miranda* rights should be recited to him in Spanish. Accordingly, Perez, who spoke Spanish, read Hidalgo his *Miranda* rights in Spanish and asked Hidalgo if he understood his rights. Perez testified that Hidalgo responded affirmatively. He further testified: "[A]fter I read him the *Miranda* warning I asked him if he had any weapons or drugs in the house. He stated to me no. Then I asked him if he wanted to talk to me. He declined so I didn't ask him any more questions."

Shortly thereafter, Jenkins and Perez presented Hidalgo with a consent to search form written in English. According to Jenkins and Perez, Perez told Hidalgo in Spanish that the officers were requesting his consent to search the premises and asked him to fill in his name at the top of the form. After Hidalgo had supplied his name, Jenkins filled in the blanks, so that it authorized the officers to conduct a complete search of the residence, the curtilage, two automobiles, and all outbuildings. It also authorized the officers to remove from the premises "any articles, items, letters, or papers to be used in the investigation of a drug violation." Rather than reading the consent to search form to Hidalgo, Perez explained it to him in Spanish. According to Perez, he also explained to Hidalgo that he had a constitutional right to refuse consent, and, Hidalgo indicated that he understood his rights, stated that he had nothing to hide, and signed the form. Although Hidalgo admitted at the suppression hearing that he had signed the consent to

---

1. This appeal was originally consolidated with Hidalgo's appeal from the district court's denial of another motion to suppress in a case arising from a Florida search and indictment. We af-

firmed in that other case under Rule 36–1 by separate order. *United States v. Hidalgo*, 3 F.3d 443 (11th Cir.1993).

search form, he testified that the form was blank when he signed it. He further testified that Perez did not explain to him which buildings, other than the house, the officers would search or which documents the officers would be authorized to seize.

On May 7, 1992, the magistrate judge issued a report and recommendation crediting the Government witnesses' testimony and recommending that Hidalgo's motion to suppress be denied. The district court adopted the magistrate judge's report and recommendation and denied Hidalgo's motion to suppress.

## II. DISCUSSION

### A. THE FIFTH AMENDMENT ISSUE

Because the consent to search was requested and obtained after Hidalgo had invoked his right to remain silent, he argues that his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the Fifth Amendment privilege against self-incrimination were violated by use of the consent and by introduction of the evidence obtained as a result of the ensuing search. *Miranda* and its progeny are designed to ensure that an individual being subjected to a custodial interrogation is accorded his Fifth Amendment privilege against compulsory self-incrimination. 384 U.S. at 444, 86 S.Ct. at 1612. It requires, among other things, that interrogation cease once the individual "indicates in any manner that he does not wish to be interrogated," and it prohibits the use of any incriminating statement obtained in violation of that requirement. *Id.* at 444–45, 86 S.Ct. at 1612; *accord Michigan v. Mosley*, 423 U.S. 96, 103–04, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975); *Christopher v. Florida*, 824 F.2d 836, 839–40 (11th Cir.1987).

The problem with Hidalgo's argument is that no incriminating statement obtained after he invoked his right to remain silent was introduced into evidence. The consent, which was obtained after Hidalgo asserted his Fifth Amendment rights, was used to justify the search and the introduction of physical evidence. But the Supreme Court has held that the Fifth Amendment protects only against compelled incriminating "evidence of a testimonial or communicative nature," and not against compelled production of physical evidence. *Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966).

An essential premise of Hidalgo's Fifth Amendment argument is the proposition that a consent to search is an incriminating statement. Our decision in *Smith v. Wainwright*, 581 F.2d 1149, 1152 (5th Cir. 1978), forecloses that proposition and Hidalgo's argument. In that case, police interrogation had continued after the defendant had asserted his *Miranda* rights. The continued interrogation produced no incriminating statements but did lead to a consent to search, and the resulting physical evidence was admitted at trial. In affirming the denial of habeas relief and holding that there was no violation of the Fifth Amendment, we explained that: "A consent to search is not a self-incriminating statement; '[i]t is not in itself evidence of a testimonial or communicative nature.'" *Id.* (quoting *United States v. Lemon*, 550 F.2d 467, 472 (9th Cir.1977)). We are not alone in our position on this issue. As the Tenth Circuit has recently observed, "[e]very federal circuit court which has addressed the *Miranda* issue presented here has reached the conclusion that a consent to search is not an incriminating statement." *United States v. Rodriguez–Garcia*, 983 F.2d 1563, 1568 (10th Cir.1993) (citing *United States v. Lewis*, 921 F.2d 1294, 1303 (D.C.Cir.1990); *United States v. Glenna*, 878 F.2d 967, 971 (7th Cir.1989); *Cody v. Solem*, 755 F.2d 1323, 1330 (8th Cir.), *cert. denied*, 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985); *Lemon*, 550 F.2d at 472); *see also United States v. Faruolo*, 506 F.2d 490, 495 (2d Cir.1974). We reject Hidalgo's contrary contention on this issue.

### B. THE SIXTH AMENDMENT ISSUE

Hidalgo next argues that, because he was indicted before his arrest and his consent to the search, his Sixth Amendment right to counsel had attached, and use of his consent obtained without the advice of coun-

sel violated the Sixth Amendment.[2] The Sixth Amendment guarantees a defendant a right to counsel in all criminal prosecutions, as a means of protecting his right to a fair trial. The right to counsel attaches once adversary judicial proceedings have been initiated against the defendant. *See, e.g., United States v. Gouveia,* 467 U.S. 180, 187–88, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984). An adversary judicial proceeding can be initiated "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* at 188, 104 S.Ct. at 2297 (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion)). After a defendant's Sixth Amendment right to counsel attaches, he has a right to the advice of counsel "at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967). The Supreme Court has referred to such a stage as a "critical stage" of a criminal proceeding. *Michigan v. Jackson,* 475 U.S. 625, 632 n. 5, 106 S.Ct. 1404, 1409 n. 5, 89 L.Ed.2d 631 (1986); *see also Maine v. Moulton,* 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985). Because Hidalgo had been indicted when he consented to the search of his Duluth residence, his Sixth Amendment right to counsel had attached, and he was entitled to advice of counsel at any critical stage of the post-indictment proceedings. Thus, we must determine whether a request for a consent to search is a critical stage of a criminal proceeding.

The Second Circuit addressed this issue in *United States v. Kon Yu–Leung,* 910 F.2d 33, 38 (2d Cir.1990), and held that a request for a consent to search is not a critical stage of a criminal proceeding to which the right to

counsel applies. In its analysis, the Second Circuit reviewed cases in which the Supreme Court had considered the right to counsel in post-indictment situations analogous to a consent to search, principally, *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). In *Wade,* the Supreme Court summarized the concerns governing the right to counsel:

> In sum, the principle of *Powell v. Alabama* [287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) ] and succeeding cases requires that we scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.

388 U.S. at 227, 87 S.Ct. at 1932. Simply stated, the Court's critical stage analysis is "designed to protect the fairness of the trial itself." *Schneckloth v. Bustamonte,* 412 U.S. 218, 239, 93 S.Ct. 2041, 2054, 36 L.Ed.2d 854 (1973); *Ash,* 413 U.S. at 322, 93 S.Ct. at 2580.

In *Wade,* the Court held that a defendant was entitled to advice of counsel at a post-indictment lineup, because a lineup was a trial-like confrontation between the accused and the witnesses to a crime and held a grave potential for substantial prejudice to the accused. 388 U.S. at 228–37, 87 S.Ct. at 1933–37. The Court reasoned that the assistance of counsel at the lineup preserved the adversary process by compensating for ad-

---

**2.** Additionally, at oral argument before this Court, Hidalgo's attorney alleged that Hidalgo had expressly requested counsel before he had consented to the search. Had this argument been raised below, it might have provided an independent ground for asserting a violation of his Sixth Amendment right to counsel. However, this argument was not raised by Hidalgo in the district court, was not addressed by the magistrate judge or ruled on by the district court, and was not raised in the statement of the issues or

the argument sections of Hidalgo's brief to this Court. Therefore, it is not properly before us. *See, e.g., Luckie v. Smith Barney, Harris Upham & Co., Inc.,* 999 F.2d 509, 511 n. 4 (11th Cir.1993) ("We will not address on appeal an issue not raised before the district court."); *McGinnis v. Ingram Equip. Co., Inc.,* 918 F.2d 1491, 1496 (11th Cir.1990) ("A party normally waives its right to argue issues not raised in its initial brief.").

vantages of the prosecuting authorities and that lack of legal assistance was likely to deprive the accused of his only meaningful opportunity to attack the identifying witness's credibility. *Id.* at 232, 87 S.Ct. at 1934–35. In contrast, the Court also stated in *Wade* that a defendant was not entitled to advice of counsel when asked to give evidence of a physical nature, such as his fingerprints or samples of blood, hair, or clothing, because, in those circumstances, "the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts." *Id.* at 227–28, 87 S.Ct. at 1932–33. In *Ash*, the Supreme Court held that a pretrial photographic display was not a critical stage of criminal proceedings because the accused was not present, thereby eliminating the possibility that he "might be misled by his lack of familiarity with the law or overpowered by his professional adversary," and because the photographs were equally accessible to the accused, thereby removing "any inequality in the adversary process." 413 U.S. at 317–18, 93 S.Ct. at 2577–78; *see also Michigan v. Jackson*, 475 U.S. 625, 632–33, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986) (post-indictment interrogation is a critical stage); *Gilbert v. California*, 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967) (taking of handwriting exemplars is not a critical stage).

In *Kon Yu–Leung*, the Second Circuit reasoned that the Sixth Amendment right to counsel does not apply to a consent to search, because a search does not generate evidence, but merely reveals evidence "already in existence and virtually certain to be available to the government in due course." 910 F.2d at 40. The request for a consent to search is not a trial-like confrontation where the absence of counsel poses a threat of substantial prejudice to the accused like that posed by the absence of counsel at a pretrial lineup, or a pretrial interrogation. Instead, it is more analogous to a request for other types of physical evidence, such as handwriting exemplars, blood samples, and the like, or to a photographic display. As in those situations, the accused can have a meaningful confronta-

tion of the evidence against him through the ordinary trial processes. For these reasons, we agree with the Second Circuit that a consent to search situation is not a critical stage of the proceedings against an accused to which the right of counsel attaches. Hidalgo's Sixth Amendment rights were not violated by his lack of counsel when he consented to a search of his residence after he had been indicted.

## C. THE SCOPE OF THE SEARCH ISSUE

 In a consensual search, the scope of the defendant's consent governs the scope of the search. *See, e.g., United States v. Strickland*, 902 F.2d 937, 941 (11th Cir.1990); *United States v. Blake*, 888 F.2d 795, 798 (11th Cir.1989). It is undisputed that Hidalgo signed a consent to search form authorizing a complete search of his residence, the curtilage, two automobiles, and all outbuildings. The form also authorized the officers to remove from the premises "any articles, items, letters, or papers to be used in the investigation of a drug violation." Nonetheless, Hidalgo argues that, because the consent to search form was written in English and he does not speak English, the scope of his consent should be dictated by Perez's Spanish explanation of the form, and he argues that the Government offered no evidence that Hidalgo was ever told in Spanish that the officers were searching for tax returns, personal check books, check registers, or records of personal expenditures.

The record and the magistrate judge's findings are contrary to Hidalgo's contentions. Perez testified that he explained to Hidalgo that the officers were searching for papers and articles. The magistrate judge found that Perez had explained the consent to search form to Hidalgo and that the form authorized the seizure of the documents in question. The district court adopted the magistrate judge's findings and those findings will not be reversed by this Court because they are not clearly erroneous. *See Blake*, 888 F.2d at 798.

## D. THE VOLUNTARINESS OF CONSENT ISSUE

 Hidalgo contends that the Government failed to prove that his consent to the

search was voluntary and not coerced. He relies on the undisputed facts that he was arrested by SWAT team members who broke into his home in the early morning, woke him, and forced him to the ground at gunpoint, and that he had invoked his right to remain silent before consenting to the search. As this Court has explained:

> Whether a suspect voluntarily gave consent to a search is a question of fact to be determined by the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. [218,] 249–250, 93 S.Ct. [2041,] 2059 [36 L.Ed.2d 854 (1973)]; *United States v. Chemaly,* 741 F.2d 1346, 1352 (11th Cir. 1984), *vacated,* 741 F.2d 1363, *reinstated on reh'g,* 764 F.2d 747 (11th Cir.1985) (en banc). The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily. *United States v. Massell,* 823 F.2d 1503, 1507 (11th Cir.1987). The district court's factual findings as to whether or not voluntary consent was given may only be disturbed if they are clearly erroneous. *Id.; United States v. Chemaly,* 741 F.2d at 1353.

*Blake,* 888 F.2d at 798. After reviewing all of the evidence presented at the suppression hearing, the magistrate judge concluded that, even though the officers' request for consent followed immediately upon Hidalgo's arrest and his invocation of his right to remain silent, the evidence indicated that the consent was voluntary. We agree with the magistrate judge's conclusion.

### III. CONCLUSION

Hidalgo's conviction is AFFIRMED.