72 F.3d 128
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Orozco GONZALEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clifford Douglas DOWE, Defendant-Appellant.
 Nos. 95-5004, 95-5026.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: November 7, 1995.
Decided Dec. 11, 1995.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CR-94-275)
 William B. Moffitt, Kyle W. O'Dowd, MOFFITT, ZWERLING & KEMLER, P.C., Alexandria, Virginia; Frank Salvato, Alexandria, Virginia, for Appellants.
 Helen F. Fahey, United States Attorney, Thomas M. Hollenhorst, Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 Before WILLIAMS and MICHAEL, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 A jury convicted both Clifford Douglas Dowe and Robert Orozco Gonzalez of conspiracy to possess and to distribute 100 kilograms or more of marijuana, see 21 U.S.C. Sec. 841(a)(1) (1988), 21 U.S.C.A. Sec. 846 (West Supp.1995), and possession with intent to distribute 100 kilograms or more of marijuana, see 21 U.S.C. Sec. 841(a)(1), 18 U.S.C. Sec. 2 (1988). We have consolidated their cases on appeal.
 
 
 2
 Appellants allege that the Drug Enforcement Agency ("DEA") violated the Posse Comitatus Act, see 18 U.S.C.A. Sec. 1385 (West Supp.1995) ("the Act"); that DEA agents did not have probable cause to support their warrantless arrests; that the fruits of a search of Gonzalez's hotel room should have been suppressed because consent to the search was obtained during an interrogation after Gonzalez requested counsel; and that there was insufficient evidence to support Dowe's convictions. Because we find these allegations meritless, we affirm Appellants' convictions.
 
 
 3
 The record discloses that Kansas authorities stopped William Ward driving a truck containing over 400 pounds of marijuana concealed in a compartment underneath the truck's bed. Ward agreed to cooperate with the DEA and to participate in a controlled delivery of the marijuana to its intended recipients. Because stopping Ward delayed the delivery, authorities flew the truck to its destination so delivery would occur in the planned time frame. Accordingly, with the assistance of the Kansas National Guard, the DEA had the truck flown to Andrews Air Force Base in Maryland.
 
 
 4
 According to the original delivery scheme, Ward was to drive the truck containing the marijuana from San Antonio, Texas, to a motel in Fairfax, Virginia, for delivery to Rogelio Cevallos. Ward drove the vehicle to the hotel, checked into his room, and telephoned Cevallos to come pick up the truck. In a second telephone conversation, Cevallos told Ward he was running late because he was waiting for his ride. An agent later observed a 1988 Acura Legend with three occupants (identified as Cevallos, Dowe, and Gonzalez) drive pass the motel. As the car passed the motel it slowed down and the brake lights came on--the vehicle's occupants appeared to be looking towards the area where the truck was located. After traveling out of sight, the vehicle reappeared on the side of the motel where Ward's room and the truck were located and parked next to the truck.
 
 
 5
 Cevallos exited the Acura and entered Ward's motel room; he and Ward discussed Ward's trip to Virginia. Cevallos told Ward the load in the truck was about 350 pounds. Cevallos took the truck keys from Ward and said, "I'm not taking it, I'm not gonna go with him, I'm just gonna give him the keys."
 
 
 6
 Cevallos exited the room and met with Gonzalez outside. They walked around the back of the truck from the passenger's side to the driver's side and Gonzalez got into the truck--a strong odor of marijuana was present at the rear of the truck. Cevallos then went back into the motel room and told Ward "he's gonna bring the money in the morning, we didn't, we didn't know what time. Yeah, he's, he's gonna give us ten grand in the morning ... [a]nd then we gonna get some weed."
 
 
 7
 Gonzalez drove the truck out of the motel parking lot; Dowe drove the Acura ahead of him. The vehicles drove onto a road going west and ultimately to a highway in the direction of Maryland, where agents stopped Gonzalez in the truck without incident. In a later search of his hotel room, the DEA seized a hotel statement showing that Gonzalez was from San Antonio, Texas; that he checked into his room on June 3, 1994; and that he made four calls to the ANA Hotel on June 5 and 6 where Cevellos was staying. The room search also revealed a breakfast coupon with Cevallos's telephone and room number at the ANA Hotel, a telephone pager, and $2397 in cash.
 
 
 8
 In an effort to stop the Acura, an agent pulled his unmarked vehicle beside Dowe's and signaled for him to pull over by placing his red bubble light in his vehicle's dash and flashing his badge and official photograph out of his open passenger side window. Despite Dowe's occasional glances at the agent, Dowe did not pull over until after the agent swerved his vehicle in front of Dowe's. The agent testified that his red flashing light was on approximately three minutes before he was able to maneuver Dowe's car to the side of the road.
 
 
 9
 In a search following Dowe's arrest, the DEA seized a telephone pager, $847 in cash, a Martins Tavern credit card receipt dated June 5, 1994, and two Texas Lotto receipts. Records from the credit card account number found on the receipt disclosed that Dowe charged air travel and hotel accommodations in San Antonio a few days before Ward departed with the truck containing the marijuana. An inventory search of the Acura netted a Casio electronic organizer, a disposable camera, and a piece of stationary from the ANA Hotel with the name, address, and telephone number for "Harold." The organizer had a secret listing for Gonzalez with his phone number and his San Antonio home address. Two photographs, developed from the film in the seized camera, depict a picture of Cevallos at the Vietnam Memorial in Washington, D.C. and a picture of what appeared to be the reflection of Cevallos and Gonzalez on the wall of the memorial.
 
 
 10
 Appellants argue that because the Government had the truck containing marijuana flown in a military aircraft from Kansas to Maryland, the Government violated the Posse Comitatus Act. This argument fails for at least two reasons. First, violation of the Act does not result in dismissal of a charge, United States v. Walden, 490 F.2d 372, 376 (4th Cir.), cert. denied, 416 U.S. 983 (1974), or suppression of evidence, United States v. Griley, 814 F.2d 967, 976 (4th Cir.1987). Second, when the DEA merely uses a military transport to fly a vehicle containing drugs from one state to another, the alleged violation is too attenuated from the supposed harm to provide standing for the defendants to contest a violation of the Act. United States v. Al-Talib, 55 F.3d 923, 930 (4th Cir.1995) (citing Allen v. Wright, 468 U.S. 737, 751 (1984) ("party must allege personal injury fairly traceable to allegedly unlawful conduct")). Accordingly the facts of the military's involvement in this case are too removed from Appellants' criminal activity to contest a violation of the Act.
 
 
 11
 Gonzalez and Dowe argue that DEA agents did not have probable cause to arrest them. We grant deferential review to a judge's finding of probable cause and only seek to ensure that the judge had a substantial basis for finding the existence of probable cause. United States v. Blackwood, 913 F.2d 139, 142 (4th Cir.1990). For Fourth Amendment purposes, at least as such amendment relates to an arrest, probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). Probable cause determinations which present no factual issues are reviewed de novo, United States v. Miller, 925 F.2d 695, 698 (4th Cir.), cert. denied, 502 U.S. 833 (1991); factual findings are reversed for "clear error," United States v. DePew, 932 F.2d 324, 327 (4th Cir.), cert. denied, 502 U.S. 873 (1991).
 
 
 12
 The relevant facts and circumstances known to the police at the time of the Appellants' arrest were that: the truck contained over 400 pounds of marijuana; Cevallos and Ward both knew the truck contained several hundred pounds of marijuana; Cevallos was delayed in getting to the motel because he was waiting for a ride; Dowe drove Cevallos and Gonzalez in the Acura to the hotel late at night; the truck had very little value; Gonzalez, Dowe, and Cevallos looked in the direction of the truck as they drove past the hotel; Cevallos entered Ward's motel room took the truck keys and said, "I'm not taking it [truck], I'm not gonna go with him, I'm just gonna give him the keys;" Cevallos met Gonzalez outside and gave him the keys and they walked around the back of the truck, where a strong odor of marijuana was present; Cevallos went back into the motel room and said, "he's gonna bring the money in the morning, we didn't, we didn't know what time. Yeah, he's, he's gonna give us ten grand in the morning ... [a]nd then we gonna get some weed;" Gonzalez and Dowe left the motel parking lot at the same time and then Gonzalez followed Dowe onto a highway in the direction of Maryland; Dowe failed to pull over his vehicle for approximately three minutes and ultimately was forced off the road by a DEA agent; Ward and Cevallos were from San Antonio. Based upon the totality of the facts known to the DEA agents at the time of the arrests, we find that they could have reasonably believed that Gonzalez and Dowe were committing the crimes for which they were ultimately convicted. See DeFillippo, 443 U.S. at 37.
 
 
 13
 Because Gonzalez consented to a search of his hotel room during an interrogation after he stated that he wished to speak to an attorney, Gonzalez contends that the district court should have suppressed the fruits of that hotel search. If a suspect requests counsel, all questioning must cease until an attorney is present in order to protect the suspect's Fifth Amendment privilege against self-incrimination. Edwards v. Arizona, 451 U.S. 477, 484-485 (1981). The Fifth Amendment, however, "protects only against compelled incriminating 'evidence of a testimonial or communicative nature' and not against compelled production of physical evidence." United States v. Hidalgo, 7 F.3d 1566, 1568 (11th Cir.1993) (quoting Schmerber v. California, 384 U.S. 757, 761 (1966)). Therefore, because an agent's request to search a hotel room does not in and of itself elicit testimonial evidence of guilt, we find the district court properly denied the motion to suppress evidence retrieved from Gonzalez's hotel room.
 
 
 14
 Finally, Dowe contends that the circumstantial evidence presented at trial was insufficient to establish he was a participant in the conspiracy. In order to establish a conspiracy, the Government must show: (1) that the conspiracy as alleged existed; (2) that the accused had knowledge of the conspiracy; and (3) that the accused knowingly became a participant in the conspiracy. See United States v. Bell, 954 F.2d 232, 236 (4th Cir.1992). This court must assess whether any rational trier of fact could have found guilt beyond a reasonable doubt when the evidence is construed in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 15
 Construing the evidence presented at trial in the light most favorable to the Government, we find that the jury could have rationally inferred that Dowe met with Cevallos or his associates in San Antonio a few days before Ward left with the truck containing marijuana to plan the delivery; that he thereafter flew to the Washington, D.C., area to assist in picking up the truck; that he knowingly drove Cevallos and Gonzalez to the motel late at night to retrieve the truck of marijuana; and that he was driving a lead car to the truck when arrested. Therefore, we find a rational jury could have found Dowe guilty of conspiracy to possess and distribute 100 kilograms or more of marijuana.
 
 
 16
 With regard to Dowe's conviction for possession with intent to distribute the marijuana, Dowe argues the evidence failed to establish he possessed the drugs. We find, however, that the jury could have rationally concluded that Dowe aided and abetted in the possession of the drugs and therefore was guilty as a principal under 18 U.S.C. Sec. 2.
 
 
 17
 Therefore, we affirm Appellants' convictions. We deny Appellants' motion for oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 
 18
 AFFIRMED.