[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 29, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15064
Non-Argument Calendar

_____

D. C. Docket No. 05-00280-CR-WTJ-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REGINALD JAVA BROWN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(March 29, 2007)

Before HULL, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Reginald Java Brown appeals his conviction for possession with intent to

distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). On appeal,

Brown argues that the district court erred in denying his pretrial motion to suppress

evidence. After review, we affirm.

## I. BACKGROUND

### A. Fourth Amendment Waiver

In February 2005, as part of a negotiated plea agreement, Brown pled guilty

in state court to involuntary manslaughter and waived his Fourth Amendment

rights during the term of his sentence.[1]  The waiver was signed by Brown,

Brown's attorney and the prosecutor in open court before his plea hearing.

The waiver form was attached to, and referenced in, both Brown's plea

agreement and the state court's judgment. The waiver stated that, for the duration

of Brown's sentence, law enforcement could search Brown or his property,

including his home, without a warrant or Brown's consent and without probable

cause, reasonable grounds or articulable suspicion, as follows:

> In consideration of the negotiated plea and for the duration of the
> sentence in the above captioned matter, any law enforcement officer
> (including probation officers) may search defendant's home, vehicle,
> person, papers, articles and effects without a warrant, without consent,

---

[1]The state prosecutor testified that the Fourth Amendment waiver was important to the state because the offense involved a shooting over three ounces of cocaine in the front yard of the residence at 1912 Quincy Street. The state prosecutor explained that it is his practice to insist on a Fourth Amendment waiver in any negotiated plea agreements when the offense involves firearms and drugs.

2

without probable cause and without reasonable grounds or articulable suspicion.

In the waiver, Brown agreed that the fruits of any search during the sentence term would be admitted in any judicial proceeding, as follows:

> Moreover, defendant hereby agrees that the fruits of any such search will be admitted into evidence at any judicial proceeding, and *expressly waives any and all objections thereto*.

The state prosecutor referred to the waiver as he summarized the plea agreement to the court, as follows:

> Count 1 is malice murder, and that only carries one potential sentence as indicted, life in prison. What's been negotiated by counsel is an involuntary manslaughter sentence and that carries one to 10 years.
> The negotiation of a 10-year total sentence, with the prison time, or serve time, being two years and 10 months, which he's already served. The balance of that will be probated. I may be doing the math wrong, but I think that comes out to seven years and two months.
> There's a $50 crime lab fee, which we'd waive in light of the time he's served. Indigent Defense is waived, because he actually hired his first lawyer. <u>The only special condition is a waiver of Fourth Amendment rights for the duration, which he's already signed.</u>
> Count 2, we'd move to nolle pros. That's the alternative theory of murder. <u>And attached to this is the Fourth Amendment waiver, and I'll tender this to the Court at this time.</u>

Transcript of Plea Hearing at 3-4 (emphasis added). The state court sentenced Brown to ten years in prison and gave Brown credit for time served, with the balance of seven years and two months to be served on probation.

**B.    Search of Residence**

Approximately nine months later, on July 1, 2005, law enforcement searched Brown's residence.  The search was prompted by the following events.  On June 30, 2005, Officer Rufus Brown and Officer Claude Debnam of the Savannah-Chatham Metropolitan Police Department were patrolling in their marked car on Quincy Street.  They observed heavy foot traffic in front of the house at 1912 Quincy Street.  When the officers' car approached, all the people in front went inside the house.

The next day, the officers decided to patrol Quincy Street again to see if they could observe the same heavy foot traffic at 1912 Quincy Street.  Upon arrival, the officers observed an unoccupied vehicle idling in front of the residence and approximately seven to ten yards away.  The vehicle was sitting on the wrong side of the street and blocking one lane of access.  The radio was blaring loud enough that the officers could hear it even though the vehicle's windows were rolled up.

Officers Brown and Debnam noticed two men, later identified as Defendant Brown and Stephen Hines, standing on the porch of 1912 Quincy Street.  Hines told the officers that the driver of the vehicle was his cousin, who had left to take his mother to the store.  When Officer Brown asked why the cousin had not used the idling vehicle to transport his mother, neither man responded.  Officer Brown

looked through the vehicle's windows and saw a large bag filled with a green, leafy substance that appeared to be marijuana. Officer Brown concluded that the vehicle had been abandoned, opened the door and smelled a strong odor of marijuana.

Officer Brown notified Officer Debnam of what he had found inside the vehicle, ran the vehicle's registration, and called for back up. While the officers waited for back up, Defendant Brown and Hines entered and exited the house several times. When the back-up unit arrived, Hines exited a back door and fled. While Officer Brown and other officers pursued Hines on foot, Officer Debnam got in his patrol car to assist in the pursuit.

Approximately five minutes later and about one mile from 1912 Quincy Street, Officer Debnam observed Defendant Brown driving a Toyota Camry, which had been parked in the driveway at 1912 Quincy Street. Officer Debnam pulled Defendant Brown over to determine what, if any, connection Defendant Brown had to the marijuana found in the idling vehicle. Officer Debnam approached Defendant Brown's car with his gun drawn and waited until another officer arrived, then holstered his gun and handcuffed Defendant Brown. Ten minutes later, Officer Debnam transported Defendant Brown back to 1912 Quincy Street in his patrol car.

5

Officer Debnam ran a records check and learned that Defendant Brown was on probation. Officer Debnam spoke with Defendant Brown's probation officer, who informed Officer Debnam of the Fourth Amendment waiver. Officer Debnam informed Chatham-Savannah Counter Narcotics Team Agent Charles Guyer of the Fourth Amendment waiver. Agent Guyer then spoke with Defendant Brown about the Fourth Amendment waiver as Defendant Brown sat in Officer Debnam's patrol car in front of the house. Agent Guyer explained to Defendant Brown that he had waived his constitutional rights relating to a search of the house. Agent Guyer asked Brown if he had any weapons or drugs in the house, to which Defendant Brown said no. Agent Guyer asked Defendant Brown which room was his, and Defendant Brown indicated that his bedroom was on the far, left-hand side of the house. Agent Guyer asked Defendant Brown if they could search his bedroom for weapons or drugs, and Brown gave his consent. After officers learned that the door to the house was locked, Defendant Brown told Agent Guyer that the key was in his pocket. Another officer retrieved keys from Defendant Brown's pocket, and Defendant Brown identified the front door key.

At about this time, Defendant Brown's mother arrived at the house. Agent Guyer spoke with Defendant Brown's mother, who confirmed that Brown lived on the left side in the den area of the house. Officers searched Defendant Brown's

room and the common areas of the house. In Brown's room, officers found crack cocaine and powder cocaine, scales, 9 millimeter ammunition and plastic baggies.

## C.    Motion to Suppress

Prior to trial, Brown filed a motion to suppress, arguing that the search at 1912 Quincy Street violated his Fourth Amendment rights. At an evidentiary hearing before a magistrate judge, the officers testified to the above sequence of events. The state prosecutor also testified to the circumstances surrounding Defendant Brown's February 2005 guilty plea to the state charge of involuntary manslaughter and the accompanying Fourth Amendment waiver.

Defendant Brown also testified and denied giving the officers consent to search 1912 Quincy Street. Defendant Brown admitted signing the Fourth Amendment waiver, but maintained that no one in the state court proceedings, including his attorney, his probation officer and the court, had explained the Fourth Amendment waiver to him. According to Defendant Brown, his defense attorney merely informed him that he was entering an Alford plea and hurriedly told him to sign several papers.

The magistrate judge entered a Report and Recommendation ("R&R"), recommending that the motion to suppress be denied. The magistrate judge discredited Brown's testimony that he had not consented to the search. The

7

magistrate judge found that there was no evidence refuting Brown's testimony that he signed the Fourth Amendment waiver without understanding its meaning. The magistrate judge declined to address the validity of the Fourth Amendment waiver. Instead, the magistrate judge concluded that (1) Defendant Brown's initial detention was supported by reasonable suspicion that he had been connected to the marijuana found in the idling vehicle, and (2) Defendant Brown voluntarily consented to the search of the house once he was returned to the scene. The magistrate judge noted that, although Agent Guyer had mentioned the Fourth Amendment waiver to Defendant Brown prior to obtaining his consent to search, Defendant Brown had not argued that this discussion coerced or pressured him into consenting, but had argued instead that he had refused to give consent.

Defendant Brown objected to the R&R. The district court overruled the objections and adopted the magistrate judge's R&R with one exception. The district court noted that Brown had asserted that any consent to the search was coerced, but rejected that claim.

The district court denied Brown's motion to suppress, and the case proceeded to trial. The jury found Brown guilty of possession with intent to distribute 50 grams or more of crack cocaine. Brown was sentenced to 200 months' imprisonment. This appeal followed.

## II. DISCUSSION

Searches undertaken without a warrant issued upon probable cause are "<u>per se</u> unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." <u>United States v. Alexander</u>, 835 F.2d 1406, 1408 (11th Cir. 1988) (quotation marks omitted). "One of the well-established exceptions to the probable cause and warrant requirements is a search which is conducted pursuant to voluntary consent." <u>United States v. Garcia</u>, 890 F.2d 355, 360 (11th Cir. 1989).

In determining whether a defendant's consent was voluntary, a court examines the totality of the circumstances. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 227, 93 S. Ct. 2041, 2047-48 (1973). A determination that consent was voluntary is a finding of fact that we will not disturb unless it is clearly erroneous. <u>United States v. Zapata</u>, 180 F.3d 1237, 1240-41 (11th Cir. 1999); <u>see also</u> <u>Garcia</u>, 890 F.2d at 359 (explaining that, where voluntariness is determined from conflicting testimony at an evidentiary hearing, we review the voluntariness finding only for clear error).

Brown first argues that the district court erred in finding that he consented to the search.[2] After hearing the witnesses' conflicting testimony and observing their

---

[2]For the first time in his reply brief, Brown argues that the search was tainted by Officer Debnam's initial traffic stop and detention, which Brown contends were not supported by

9

demeanor, the magistrate judge discredited Brown's testimony and instead credited the officers' testimony that Brown agreed to the search and willingly provided the officers with a front door key. Over Brown's objection, the district court adopted the magistrate judge's findings of facts, including the credibility determinations. Nothing in the record or in Brown's appellate arguments leaves us with the definite and firm conviction that a mistake has been made. Therefore, we will not disturb the district court's finding that Brown consented to the search of his residence.

Next, Brown argues that, if he consented, his consent was not voluntary due to the "show of force by the police, combined with the amount of time Brown was detained, combined with the fact that Brown was never informed of any of his rights . . . ." We disagree.

First, the "show of force" to which Brown refers was minimal and was over by the time Brown gave his consent. Brown makes much of the fact that Officer Debnam drew his gun after he pulled Brown's car over and did not holster the gun until back-up had arrived and he was placing Brown in handcuffs. However, Officer Debnam's initial traffic stop had concluded at least ten minutes before Brown gave his consent. There is no evidence that any officer had a gun drawn at

---

reasonable suspicion. We do not consider arguments raised at this late juncture. See United States v. Levy, 416 F.3d 1273, 1276 n.3 (11th Cir. 2005) (explaining that this Court does not consider issues not timely raised in a party's initial brief).

the time Brown was asked to consent to the search. At the time Brown gave his consent, he was sitting in the back of the patrol car in handcuffs. We have concluded that far more serious shows of force were not coercive. See, e.g., Garcia, 890 F.2d at 362 (finding consent was voluntary even though fourteen law enforcement agents were present when the defendant was arrested and the defendant was handcuffed at the time he gave consent); United States v. Hidalgo, 7 F.3d 1566, 1571 (11th Cir. 1993) (concluding consent was voluntary even though the defendant had been "arrested by SWAT team members who broke into his home in the early morning, woke him, and forced him to the ground at gunpoint"); United States v. Espinosa-Orlando, 704 F.2d 507, 510, 513 (11th Cir. 1983) (concluding consent was voluntary after four officers had drawn their weapons, asked the defendant to step away from his car, told him to lie on the grass, and asked for consent while he was on the ground and one officer still had his weapon drawn).

Second, the district court found that the entire encounter, from Officer Debnam's initial stop to Agent Guyer's conversation with Brown in the back of the patrol car lasted between twenty and twenty-five minutes, a finding Brown does not challenge on appeal. This is not the kind of prolonged detention that might contribute to a coercive environment.

11

Finally, the government is not required to prove that the defendant knew he had the right to refuse to consent, and a defendant's lack of knowledge of this right is not dispositive, but is just one factor to consider in evaluating the totality of the circumstances. Schneckloth, 412 U.S. at 227-34, 93 S. Ct. at 2048-51 (1973).[3] In considering the totality of the circumstances at the time Brown consented, we cannot say that we are left with the firm and definite conviction that Brown's consent was involuntary.

Accordingly, the district court did not clearly err when it concluded that Brown voluntarily consented to the search and did not err in denying Brown's motion to suppress the evidence.

**AFFIRMED**.

---

[3]Brown also argues that he was not informed of his Miranda rights prior to giving his consent. We have previously explained that a consent to search is not a self-incriminating statement and that the failure to give a defendant a Miranda warning does not render the defendant's consent to search invalid. See Hidalgo, 7 F.3d at 1568.