MARTIN, Circuit Judge,
concurring in part, dissenting in part:
We have held that “a warrantless arrest in a home violates the Fourth Amendment unless the arresting officer had probable cause to make the arrest and either consent to enter or exigent circumstances.” Bashir v. Rockdale Cty., Ga., 445 F.3d 1323, 1328 (11th Cir.2006). We have further specified that police may not reach through the doorway of a home to arrest someone who is standing inside. See McClish v. Nugent, 483 F.3d 1231, 1248 (11th Cir.2007). Based on these cases, the Majority holds that Deputy Pederson violated the Fourth Amendment when he or *1059 dered Mr. Moore to turn around and put his hands behind his back and then reached through the doorway of Mr. Moore’s home to handcuff and arrest him. I agree with the Majority’s careful reasoning on this question and join this holding. But I part ways with the Majority on the issue of qualified immunity. I believe that the cases the Majority relies on to identify a Fourth Amendment violation clearly established it. The distinctions the Majority attempts to draw between our Circuit precedent and Mr. Moore’s case aré, in my view, foreclosed by our precedent or require us to find facts favorable to the officer seeking a judgment in his favor, which we are not permitted to do.
I.
McClish draws a clear line: police may not reach through the doorway of a home to execute a warrantless arrest. Deputy Pederson crossed this line when he reached into Mr. Moore’s home to arrest him. The Majority emphasizes what it correctly calls dicta from McClish suggesting that this line could be blurry in circumstances where an arrestee chooses to “surrender to the police.” Based on this distinction, the Majority concludes that “the law was not clearly established until today that Moore’s actions in acquiescing to Pederson’s instructions did not amount to consent.” Maj. Op. at 1053.
The Majority’s reasoning does not apply the standard by which we have long defined consent. Submission to law enforcement commands is not consent, which must be free and voluntary. See Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (“[T]he burden of proving that ... consent was obtained and that it was freely and voluntarily given ... is not satisfied by showing a mere submission to a claim of lawful authority.”); United States v. Hidalgo, 7 F.3d 1566, 1571 (11th Cir.1993) (“The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to- a claim of lawful authority but rather was given freely and voluntarily.” (quotation omitted)). This is especially true for “consent” to arrest a suspect in his home. “A suspect does not consent to being arrested within his residence when his consent to the entry into his residence is prompted by a show' of official authority.” United States v. Edmondson, 791 F.2d 1512, 1515 (11th Cir.1986).
These cases clearly establish that an arrestee does not “consent” when he obeys a police officer’s command that he is under arrest. Neither does an arrestee “surrender” anything when he obeys an officer’s commands while under arrest. Deputy Pederson told Mr. Moore he was under arrest. He then took out handcuffs and told Mr. Moore to turn around and put his hands behind his back. Mr. Moore did not “volunteer” or “consent” to anything when he obeyed these orders.
Not only do our consent cases clearly distinguish involuntary submission from voluntary consent, McClish specifically explained how the consent standard functions when police try to arrest a suspect at his doorway. McClish recognized that “we have held that “whatever relevance the implied consent doctrine may have in other contexts, it is inappropriate to sanction entry into the home based upon inferred consent.’ ” McClish, 483 F.3d at 1241 (quoting United States v. Gonzalez, 71 F.3d 819, 830 (11th Cir.1996)). This Circuit precedent contradicts the Majority’s conclusion that the law was not “clearly established that a person in his own home who simply follows an officer’s instructions from outside the home to turn around and present hands for cuffing does not ‘surrender’ and therefore consent to entry for the *1060 purposes of arrest.” Maj. Op. at 1039. The question of whether an arresting officer can infer implied consent to enter a home to make an arrest was not left open by McClish. It was expressly answered in the negative.
The Majority places a lot of emphasis on the fact that the McClish panel cited a case from the Seventh Circuit. Too much, I think. The McClish panel’s citation to United States v. Berkowitz, 927 F.2d 1376 (7th Cir.1991), was for the unremarkable proposition that “there is nothing in Pay-ton that prohibits a person from surrendering to police at his doorway.” McClish, 483 F.3d at 1241 (quoting Berkowitz, 927 F.2d at 1386). In making this reference, the McClish panel never stated the facts of Berkowitz or its holding, let alone any of the “alternative factual scenarios,” Maj. Op. at 1051, in the opinion that the Majority now analyzes for Mr. Moore’s case. I cannot agree that when our Circuit makes a single general reference to an out-of-circuit case, unquoted portions of that case can change our own Circuit’s more specific holding that “it is inappropriate to sanction entry into the home based upon inferred consent.” McClish, 483 F.3d at 1241 (quotation omitted). We all agree that principles of law do not become “well established” in the Eleventh Circuit on account of holdings from other Circuits. By the same token, principles that are well established under our precedent cannot be dissipated by holdings from other Circuits.[1]
The Majority is right to point out that we must determine whether a constitutional rule is clearly established “in light of the specific context of the case, not as a broad general proposition.” Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). But the rule that an officer may not infer consent to reach into a home to execute an arrest is not a broad general proposition. McClish established this rule in very specific terms. It held that police could not reach into a home to make an arrest without one of three things: a warrant, exigency, or consent. See McClish, 483 F.3d at 1241. As to consent, the opinion specified that “it is inappropriate to sanction entry into the home based upon inferred consent.” Id. (quotation omitted).
In both this case and McClish, police reached into a home to make an arrest. Though the McClish arrest was more forceful than Mr. Moore’s arrest in that the officer in McClish grabbed the suspect before commanding him to do anything, McClish did not analyze the amount of force used by the officer. Instead, McClish held that reaching into a suspect’s home to arrest him is an unlawful physical intrusion. As in McClish, Deputy Peder-son here “violated [Mr. Moorej’s Fourth Amendment rights by reaching through [Mr. Moorej’s open doorway to effect the arrest when [Mr. Moore] was standing near the doorway but fully within the confines of his home.” 483 F.3d at 1241.
II.
Even if a police officer could infer consent to énter a home based on a suspect obeying an order to turn around, such an *1061 implied consent only matters if we could conclude (as a matter of law) that Deputy Pederson inferred such consent in this case. I do not think we can reach this conclusion without making factual assumptions that we are not entitled to make at the summary judgment stage.
Whether a suspect gave consent freely and voluntarily “is a question of fact to be determined by the totality of the circumstances.” United States v. Blake, 888 F.2d 795, 798 (11th Cir.1989). “The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily.” Id. In the civil context, when summary judgment turns on disputed facts or requires factual inferences, “[t]he evidence of the non-mov-ant is to be believed, and all justifiable inferences are to be drawn in his favor.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); see also Tolan v. Cotton, — U.S.-,-, 134 S.Ct. 1861, 1868, 188 L.Ed.2d 895 (2014) (per curiam) (summarily reversing Fourth Amendment qualified immunity decision “so that the court can determine whether, when [the non-movantj’s evidence is properly credited and factual inferences are reasonably drawn in his favor, [the movantj’s actions violated clearly established law”); Brosseau v. Haugen, 543 U.S. 194, 197-98, 125 S.Ct. 596, 598, 160 L.Ed.2d 583 n.3 (2004) (summarily reversing Fourth Amendment qualified immunity decision “to correct a clear misapprehension of the qualified immunity standard”).
The Majority holds that “the law was not clearly established until today that Moore’s actions in acquiescing to Peder-son’s instructions did not amount to consent.” Maj. Op. at 1053. For the reasons I have set out above, I believe our consent precedent clearly foreclosed the distinction the Majority makes here. But even if implied consent were a basis for extending qualified immunity to Deputy Pederson, this distinction is irrelevant unless we also assume the fact that Deputy Pederson could have inferred consent from Mr. Moore’s reaction to his commands.
This record does not permit this finding as a matter of law. The District Court did not analyze consent. But if it had, it would have had to accept Mr. Moore’s version of the facts and construe all inferences in his favor. Mr. Moore’s opposition to summary judgment clearly set out his version of the facts: “Plaintiff did not consent to the interaction.” Mr. Moore’s deposition confirms this account specifically as to the moment Deputy Pederson reached into his home. Mr. Moore testified that he turned around and submitted to an arrest because Deputy Pederson told him to “put your hands behind your back” and then “brought the handcuffs out.” In turn, he thought, “I’m sure he’s got to be ... some type of law person. So I turned around and then he put the cuffs on me.... The only reason I turned around is because I saw the handcuffs.”
Construing the evidence in Mr. Moore’s favor, as we must, there is no basis for finding “both the existence of consent and that the consent was not a function of acquiescence 'to a claim of lawful authority but rather was given freely and voluntarily.” Hidalgo, 7 F.3d at 1571 (quotation omitted). When it decides this case based on what an objectively reasonable officer might have inferred from Mr. Moore’s conduct, the Majority neglects the requirement that “[t]he evidence of the non-mov-ant is to be believed” and that “all justifiable inferences ... be drawn in his favor.” Anderson, 477 U.S. at 255, 106 S.Ct. at 2513. So even if I accepted, as the Majority does, that qualified immunity for Depu *1062 ty Pederson turned on whether an officer could have objectively inferred consent, his version of the facts as the non-movant would require sending Mr. Moore’s case back for a trial.
For both of these reasons, I respectfully dissent from the opinion of the Majority.

. That being said, I do not think McClish's reference to "surrendering” was meaningless. This "surrendering” distinction could matter in cases where consent is not "inferred.” For example, there is no "entry based upon inferred consent” if an arrestee surrenders by voluntarily stepping outside to submit to an arrest. I realize that the Berkowitz opinion discussed an officer reaching inside, not an arrestee stepping outside. But for myself, I would reach no further into another Circuit's opinion than is allowed by our own binding precedent, which forbids "entry into the home based upon inferred consent.” McClish, 483 F.3d at 1241 (quotation omitted).