**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richardo TORRES, Augustin Figueredo
and Pedro Reinosa,
Defendants-Appellants.**

**No. 81–3685
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Aug. 26, 1982.

the defendant's plea was fully voluntary and was taken in meticulous compliance with Rule 11 requirements.

Young, McMahon & Levert, Joseph R. McMahon, Jr., New Orleans, La. (Court-appointed), for Torres.

Lawrence B. Fabacher, II, New Orleans, La. (Court-appointed), for Figueredo.

John R. Simmons, Jr., Covington, La. (Court-appointed), for Reinosa.

John P. Volz, U. S. Atty., John Patrick Deveney, Michael Schatzow, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Augustin Figueredo, Richardo Torres, and Pedro Reinosa were convicted by a jury of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). Finding each of their contentions raised on this appeal to be without merit, we affirm.

## I. Facts

The facts are set out here in the light most favorable to the government. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

Augustin Figueredo and his wife, Norma, were introduced in February 1981 to Fitzroy George. Approximately once or twice a week after this meeting, George purchased drugs from the Figueredos for resale. On May 28, 1981, the Figueredos sold one ounce of cocaine to George. George unwittingly resold the cocaine to federal agents who had established an undercover operation aboard a boat at a New Orleans marina. On June 10, 1981, the Figueredos sold two and one-half additional ounces to George, and George again resold the cocaine to the agents. From the time of the first transaction, George conveyed to the Figueredos that the cocaine was for "the people on the boat" and that the two small deals were merely sample transactions. George expected to consummate a much larger sale later.

Near the time of the second sample transaction, George specifically requested the Figueredos to obtain a kilogram of cocaine for the agents. Mr. Figueredo contacted Pedro Reinosa, who promised to investigate possible sources. On July 1, 1981, Reinosa called Mr. Figueredo with the news that he had located a source who could supply a kilogram. At about 2:45 that afternoon, Reinosa arrived at the Figueredos' house with Richardo Torres and the kilogram of cocaine. Torres, who was unknown to the Figueredos, vouched for the quality of the cocaine and promised them lower prices on future purchases. The Figueredos then called George, who instructed them to go directly to the marina. The Figueredos drove their car to the marina and were followed by Reinosa and Torres in Reinosa's Ford Bronco.

At 4:15 the agents and surveillance officers on the boat observed the arrival of two "Spanish" males in a Bronco, followed by a van driven by George. George then met with the agents and informed them that "his people" were immediately behind him with the cocaine. The Figueredos arrived next and parked in the lot adjacent to George's van. George approached the Figueredos and asked, apparently referring to Reinosa and Torres, "Hey, man, are you being followed?" Mr. Figueredo assured him that "it's no problem; that is my people." As they walked toward the boat, Figueredo looked at Torres and Reinosa in the van and nodded. Both Reinosa and Torres nodded in return. Aboard the boat with Mr. Figueredo, George told the agents: "I told you I could do it and here it is!" Mr. Figueredo stated that the cocaine was 65% pure and had large "rocks" (crystallized cocaine) in it.

The agents on the boat promptly arrested Mr. Figueredo and George. Surveillance officers at the marina arrested Mrs. Figuer-

edo, Reinosa, and Torres. Agent George Cazenavette advised Reinosa of his constitutional rights and was told by Reinosa that he understood them. Reinosa then explained that he came to the marina often. On this occasion, according to Reinosa, he had come to look at boats. When Cazenavette asked Reinosa how that was possible with the Bronco facing away from the pier, Reinosa remained silent.

Mr. and Mrs. Figueredo, Reinosa, Torres, and George subsequently were indicted for conspiracy to distribute cocaine and distribution of cocaine. Mrs. Figueredo and George pleaded guilty to the charges before trial. In exchange for her testimony against Reinosa, Torres, and her husband, Mrs. Figueredo received a suspended sentence.

On October 28, 1981, a jury found the three remaining defendants guilty on both the conspiracy and the distribution charges. Figueredo received a ten-year sentence on each count, with the sentences to run consecutively. Reinosa received two twenty-year sentences to run consecutively. Torres received two ten-year sentences to run concurrently. The four errors that the defendants allege the district court committed are discussed below.

## II. The Sample Transactions

The defendants object to the district court's admission of evidence of the May 28 and June 10 sample transactions. Their claim is based on Fed.R.Evid. 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

According to the defendants, evidence of these "other acts" should have been excluded because it was not admitted for any of the "other purposes" enumerated in Rule 404(b).

■ The short answer to this argument is that the sample transactions were not extrinsic to the acts for which Messrs. Figueredo, Reinosa, and Torres were indicted. An act is not extrinsic, and Rule 404(b) is not implicated, where the evidence of that act and the evidence of the crime charged are inextricably intertwined. *United States v. Killian*, 639 F.2d 206, 211 (5th Cir.), *cert. denied*, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981); *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979). We explained this principle in *Aleman*:

> In the usual case, the "other acts" occurred at different times and under different circumstances from the crime charged. The policies underlying the rule are simply inapplicable when some offenses committed in a single criminal episode become "other acts" because the defendant is indicted for less than all of his actions. If a person breaks into a house, murders the occupants, and steals a television set, the individual offenses do not become "wholly separate and independent crimes" merely because they are made the subject of separate indictments.

592 F.2d at 885. In this case, although the "other acts" occurred at different times, they clearly were part of a single criminal episode. The government demonstrated that the sample transactions were necessary preliminaries to the larger sale that led to the defendants' arrests. It was during those transactions that the plans for the purchase of the larger quantity of cocaine were laid. These were not "other acts" of the type contemplated by Rule 404(b). Evidence concerning them was necessary to provide coherence to the government's case.

■ The defendants counter by arguing that the "inextricably intertwined" standard was not met because Reinosa and Torres played no role in the preliminary sales and the evidence connecting Mr. Figueredo to them was insubstantial. In effect, they argue that evidence concerning the sample transactions is not admissible against them because they had not yet joined the conspiracy when those transactions were consummated.

We rejected a similar argument in *United States v. Bates*, 600 F.2d 505 (5th Cir. 1979). There the defendant objected to testimony concerning events related to a smuggling operation that took place before he joined the operation. We stated:

> The appellant's objections misapprehend both the Federal Rules of Evidence and the substantive law of conspiracy.
>
> As the district court recognized, it is a misnomer to characterize the acts and backgrounds of the co-conspirators as "extraneous offense" evidence. The testimony was not evidence of other crimes committed by Bates himself. Rather, the testimony was fully admissible evidence of an ongoing conspiracy as charged in the indictment.

600 F.2d at 509 (citations omitted).

In this case, unlike in *Bates*, the indictment does not allege that the prior acts were part of the conspiracy. But this is a distinction without a difference. Although not included in the indictment, the evidence of the sample transactions "formed an integral and natural part of the agents' accounts of the circumstances surrounding the offenses for which [the defendants were] indicted." *United States v. Bloom*, 538 F.2d 704, 707 (5th Cir. 1976), *cert. denied*, 429 U.S. 1074, 97 S.Ct. 814, 50 L.Ed.2d 792 (1977).

In sum, the evidence of the sample transactions was essential to explain the background of the one kilogram sale; it was not introduced to impugn the character of any of the defendants, the use that Rule 404(b) proscribes. The evidence was relevant, and its probative value outweighed any possibility of unfair prejudice. The district court properly admitted it.

### III. Co-Conspirator Statements

■ The defendants object next to the admission of numerous co-conspirator statements on the ground that they are hearsay. "Under a long-recognized exception to the hearsay rule, a statement made by one member of a conspiracy during the course of and in furtherance of the conspiracy may be used against other members of the conspiracy if certain conditions are met."

*United States v. James*, 590 F.2d 575, 577 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). *See* Fed.R.Evid. 801(d)(2)(E). The defendants do not quibble with this exception to the hearsay rule. Rather, they urge that the "certain conditions" established in *James* were not satisfied here.

In addressing the procedural requirements for admission of a co-conspirator statement, *James* held:

> [A]t the conclusion of all the evidence the court must determine as a factual matter whether the prosecution has shown by a preponderance of the evidence independent of the statement itself (1) that a conspiracy existed, (2) that the co-conspirator and the defendant against whom the co-conspirator's statement is offered were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy.

590 F.2d at 582. Only then can the jury be allowed to consider the statement.

■ The defendants assert that the district court failed to make the requisite *James* determination. The record to the contrary is clear. Moreover, this determination was supported by a preponderance of the evidence. There is ample independent evidence in the record to support the judge's finding that a conspiracy existed and thus that the co-conspirator statements were admissible. Mrs. Figueredo testified that she and her husband made efforts to obtain the kilogram of cocaine for George and eventually obtained it from Reinosa. She further testified that Reinosa and Torres brought the cocaine to her home, weighed it and discussed the price, and then went to the marina, where the delivery and arrests took place. This testimony amply established the existence of the conspiracy.

■ The defendants specifically object to the admission of co-conspirator statements made regarding the sample transactions. The defendants argue that because they had not yet joined the conspiracy the co-conspirator exception to the hearsay rule is

inapplicable. This objection is without merit. In *United States v. United States Gypsum Co.*, 333 U.S. 364, 393, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948), the Supreme Court stated: "With the conspiracy thus fully established, the declarations and acts of the various members, even though made or done prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of co-conspirators in aid of the conspiracy." *See also United States v. Worthington*, 642 F.2d 150, 152 (5th Cir. 1981).

■ Finally, the defendants characterize Mrs. Figueredo's testimony regarding an account related to her by Mr. Figueredo of a telephone conversation he had with Reinosa as inadmissible hearsay within hearsay. But both Reinosa's and Mr. Figueredo's statements made during the conversation are admissible as co-conspirator statements under Rule 801(d)(2)(E). *See* Fed.R.Evid. 805. This argument too is without merit.

## IV. Reinosa's Post-Arrest Statement

The defendants next contend that the district court erred in failing to investigate whether Reinosa's post-arrest statement was knowing and voluntary. At trial, federal agent Cazenavette testified:

> I asked Mr. Reinosa what was he doing in the Marina's parking lot. He told me that he had frequented the area quite often going to the restaurants at the West End. I specifically asked him, well, what was he doing in the parking lot. He said that he was looking at the boats. And I asked him how could you be looking at the boats if you were backed into the pier. At that point he just didn't answer.

No motion to suppress Cazenavette's testimony was interposed before trial, though counsel was aware that the statement might be used. Defense counsel did not request a voluntariness hearing until the testimony was presented. The district court found that Reinosa's statement was not inculpatory and refused to conduct the requested hearing. Defendants now argue that this refusal constitutes reversible error.

■ We disagree. The record is devoid of any evidence that Reinosa's statement was less than completely voluntary. Counsel did not allege at trial, nor does he urge on this appeal, any specific grounds for contending that Reinosa's statement was not voluntary. We conclude that the court did not err in refusing to conduct a voluntariness hearing. *See United States v. Gresham*, 585 F.2d 103, 108 (5th Cir. 1978).

■ Additionally, we agree with the trial court that Reinosa's statement was not inculpatory. He communicated to Cazenavette that he was at the marina to look at boats, not that he was participating in a major drug transaction. The direction he parked his car does not establish that his statement is false. Because the statement was not inculpatory, it was not a confession under 18 U.S.C. § 3501(e), and no voluntariness hearing was required under 18 U.S.C. § 3501(a) and *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

## V. Sufficiency of the Evidence

■ Finally, the defendants assert that the evidence presented at trial was insufficient to support their convictions. Defendants' argument is based on the fallacious assumption that Mrs. Figueredo's testimony should have been completely disregarded. "The jury is the ultimate arbiter of the credibility of witnesses, and, unless a witness' testimony is so incredible on its face that it defies physical laws," *United States v. Chagra*, 669 F.2d 241, 257 (5th Cir. 1982), the testimony must be credited on appeal.

Here, Mrs. Figueredo's testimony was the centerpiece of the government's case. The jury obviously believed her. Viewing the evidence, including Mrs. Figueredo's testimony, in the light most favorable to the government, we are convinced that any rational trier of fact could have found the essential elements of the crimes with which the defendants were charged beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The convictions of the defendants are AFFIRMED.