UNITED STATES of America,
Plaintiff–Appellee,

v.

Patricia COONEY and Samuel
Boswell, Defendants–
Appellants.

Nos. 00–5441, 00–5447.

United States Court of Appeals,
Sixth Circuit.

Jan. 22, 2002.

Before BATCHELDER and NORRIS, Circuit Judges; GWIN, District Judge.*

GWIN, District Judge.

Appellants Patricia Cooney and Samuel Boswell were convicted for their involvement in a conspiracy to possess and distribute cocaine and launder money. With these appeals, consolidated ·for the purposes of decision, the Court decides if the district court properly denied the defendants' motions to suppress evidence, motions for mistrial, and motions for judgment of acquittal. The Court must also decide if the district court correctly applied the federal sentencing guidelines when calculating the defendants' sentences.

Regarding Defendants Boswell and Cooney's motions to suppress evidence, they say Cooney did not voluntarily consent to the search of their house because she requested an attorney before later giving police officers consent to search the house. In addition, Defendant Cooney filed a motion to suppress the evidence obtained from a wiretap. She says the police did not attempt more traditional investigative methods before tapping the phones. The district court adopted the magistrate judge's recommendation to deny the motions to suppress.

* The Honorable James S Gwin. United States District Judge for the Northern District of Ohio, sitting by designation.

With regard to the defendants' argument that mistrial should have been given, the defendants challenge certain testimony from witness William Bentley. Bentley testified on how he met Defendant Cooney. Defendants Cooney and Boswell say Bentley's testimony impermissibly interjected character evidence under Fed.R.Evid. 404(b). The district court allowed Bentley to testify about the conspiracy and his general relationship with Cooney. The defendants motioned for a mistrial after the prosecutor allegedly solicited testimony from Bentley that violated the district court's order. The district court denied the motion for mistrial.

After conviction, the defendants filed motions for judgment of acquittal. Defendants Boswell and Cooney say the government offered insufficient evidence to establish the elements of the drug charges because the government relied on the testimony of several convicted co-defendants who testified as part of plea agreements. With respect to the money laundering charges, Defendant Cooney says the government had insufficient proof she attempted to conceal or disguise the money she received for selling drugs. The district court denied the defendants' motions for acquittal.

With respect to their sentences, the defendants say the district court erred under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), when it sentenced the defendants by reference to the amount of cocaine never determined by the jury. The defendants also say the district court erred because there was insufficient evidence to assess a four level enhancement to each defendant as a leader or organizer under U.S. Sentencing Guideline ("U.S.S.G.") § 3B1.1(b).

Finally, Defendant Cooney says the district court erred in assessing a two level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 after finding she testified untruthfully. Cooney says such an enhancement has a chilling affect on a defendant's right to testify. In addition, Cooney says the district court did not enhance Defendant Boswell's sentence even though he also denied involvement in the drug conspiracy.

We find the district court properly denied the defendants' motions to suppress, motions for mistrial, and motions for judgment of acquittal. We also find the district court properly assessed sentence enhancements for the defendants' being leaders and organizers and for obstructing justice. However, we find the district court erred when sentencing Cooney to life imprisonment because the sentence exceeded the statutory maximum. For the reasons set forth below, we partially AFFIRM the judgment of the district court. We VACATE Defendant Cooney's sentence and REMAND her case for resentencing.

## I.

From the fall of 1995, until November 1997, Defendants Cooney and Boswell controlled and directed the transportation of approximately 1,000 kilograms of cocaine from Miami, Florida to Daren Reese and his distribution network in Memphis, Tennessee. At its height, the drug ring was transporting 50 to 75 kilograms a month from Miami to Memphis. Cooney and Boswell directed couriers to drive shipments of 25 kilograms of cocaine to Memphis. After he received the drug shipments, Reese organized the sale of the cocaine and the collection of drug proceeds. Reese delivered the drug proceeds to the couriers who returned the money to Cooney and Boswell in Miami to continue the operation.

In early September 1996, Cooney and Boswell sent Lorenzo Hollis, Marie Hollis and Reginald Green to Memphis to deliver cocaine to Reese. On September 12, 1996, Reese's organization paid approximately $355,000.00 for previous cocaine shipments and/or the shipment in September 1996.[1] After the payment, Green and Hollis left for Miami in a rental car.

As the couriers traveled through Macon, Georgia, Officer Eric Woodford observed their vehicle being driven in a reckless manner. He pulled them over, received consent to search the vehicle, and found approximately $105,000 hidden in a grocery sack in the backseat and $250,000 hidden in three "Tide" detergent boxes in the trunk of the vehicle.

While in Macon, Marie and Lorenzo Hollis went to a restaurant near the police station and had a series of conversations with Cooney about the seizure. Daren Reese also spoke with Cooney about the seizure from a pay telephone in Memphis. Upon returning to Miami, Lorenzo and Marie Hollis reported the traffic stop and seizure to Cooney.

In the fall of 1997, law enforcement officers obtained an order to intercept telephone conversations on two of Reese's cellular telephones. On October 30, 1997, officers intercepted a telephone call between Marie Hollis and Reese indicating that a shipment of cocaine was en route to Memphis. Lorenzo Hollis drove the courier car to Memphis for Cooney and Boswell. Once in Memphis, Lorenzo Hollis drove to a restaurant and exchanged car keys with LaTonia Pope, Reese's cousin. The police watched Hollis and Pope exchange keys. When Pope drove the courier car away from the restaurant, officers conducted a traffic stop and seized 25 kilo-

grams of cocaine in a secret compartment of the vehicle.

Similarly, on October 12, 1997, law enforcement officers intercepted a phone call between LaTonia Pope and Reese indicating a drug shipment had arrived. While most of this cocaine was sold, Renard Rice, Reese's "business" partner, hid the remaining cocaine in his girlfriend's home. On November 3, 1997, officers seized 3.7 kilograms of cocaine while responding to a 911 call about a robbery in progress at the home. The seized cocaine came from the October 12, 1997, shipment Cooney and Boswell sent to Reese.

These events provided enough evidence for a grand jury to indict Cooney and Boswell in February 1998. On March 2, 1998, at approximately 5:30 a.m., FBI and local law enforcement officers went to Boswell and Cooney's house in Miami to execute a warrant for the arrest of Cooney. Cooney, while still dressed in her sleep wear, opened the door after commanding officer Special Agent Scott Umphlet knocked and identified himself. A female uniformed officer immediately began the arrest process.

Detective Laura Medley escorted Cooney upstairs so she could change clothes. While upstairs, Detective Medley asked Cooney for permission to search the house. Cooney gave verbal consent for the officers to search the house.

Once she returned downstairs, Agent Umphlet read Cooney her rights from an FBI form. Cooney declined to sign the FBI rights form, saying she wanted to talk to an attorney first. Agent Umphlet then read Cooney the contents of a consent to search form and requested permission to search the house. Cooney stated "she had

---

1. Only $250,000 of the money was for Cooney and Boswell Unbeknownst to Cooney and Boswell, Marie Hollis had delivered 5 kilograms of cocaine from another supplier in a side deal with Reese. The remaining $105,000 was payment for that side deal.

nothing to hide" and signed the consent to search form. The consent to search form had a written notice telling the occupant he or she had the right to refuse consent. During their search, the officers seized various documents. Cooney signed receipts for the seized items.

On July 29, 1998, Defendant Cooney moved to suppress all evidence obtained by the wiretaps.[2] On August 27, 1998, the magistrate judge conducted a hearing on the motion. At the hearing, Defendant Cooney did not challenge the probable cause for the wiretaps but insisted her Fourth and Fifth Amendment rights had been infringed. The magistrate judge orally recommended denial of the motion for failure to state a basis in fact or law. Defendant Cooney did not file any objections to the magistrate judge's report and recommendation. While aware of the pending motion before trial, the district court did not formerly adopt the magistrate judge's report and recommendation to deny Cooney's motion to suppress the wiretap evidence until March 22, 2000.

On February 17, 1999, Defendant Boswell filed a motion to suppress all objects seized during the search of his and Cooney's house.[3] On April 8, 1999, the magistrate judge held a suppression hearing on the matter. The magistrate court recommended denying the motions to suppress on the basis that Cooney gave voluntary verbal and written consent for the search of the house. On November 30, 1999, the district court adopted those findings and entered an order denying the motions.

On September 3, 1998, the federal grand jury sitting in Memphis returned a nineteen count second superseding indictment charging eighteen defendants, including Cooney and Boswell, with several cocaine trafficking and money laundering charges. The indictment named Cooney and Boswell in five of the charges:

Count 1: Conspiracy to possess with intent to distribute in excess of 5 kilograms of cocaine under 21 U.S.C. § 846 (2001);

Count 2: On October 30, 1997, aiding and abetting in causing the possession with intent to distribute approximately 25 kilograms of cocaine under 21 U.S.C. § 841(a)(1) (2001) & 18 U.S.C. § 2 (2001);

Count 3: On November 3, 1997, aiding and abetting in causing the possession with intent to distribute approximately 3.7 kilograms of cocaine under 21 U.S.C. § 841(a)(1) & 18 U.S.C. § 2;

Count 14: Conspiracy to commit money laundering by conducting financial transactions with the proceeds of drug sales with the intent to promote more drug activity under 18 U.S.C. § 1956(h) (2001);

Count 16: On September 12, 1996, aiding and abetting the attempt to transfer and pay approximately $355,000 from the proceeds of the distribution of cocaine with intent to promote the carrying on of additional drug sales under 18 U.S.C. § 2 and § 1956(a)(1)(A)(i).

At trial, the government presented the testimony of convicted co-defendants Darren Reese, Lorenzo Hollis, Marie Hollis, and LaTonia Pope. The government introduced conversations collected through the wiretaps. In addition, the government introduced the call records of more than 100

---

2. Defendant Boswell objected to the use of the wiretap evidence at trial but did not make a written motion to suppress the wiretap evidence until March 7, 2000.

3. On April 6, 2001, Defendant Cooney adopted Boswell's motion to suppress and participated in the subsequent evidentiary hearing.

different telephones to show a pattern of call activity between Cooney, Boswell, and Reese.

The government also presented the testimony of William Bentley. In the early 1990s, Bentley bought cocaine from Cooney in Macon, Georgia. Cooney delivered Bentley's cocaine in "Tide" boxes similar to those containing the money in the September 12, 1996, seizure. In addition, Cooney called Bentley shortly after the police seized the $355,000 and asked him to send her a newspaper article on the traffic stop.

Before Bentley took the stand, the defendants moved in limine to exclude Bentley's testimony. The district court ruled that the telephone conversation on September 12, 1996, was admissible and relevant to the conspiracy charge. The district court also allowed general testimony about Cooney and Bentley's prior relationship because it explained why Cooney would contact Bentley within days of the traffic stop in which the police seized the $355,000. However, the district court also held that Bentley could not testify specifically about his dealings with Cooney in the early 1990s or the packaging of the cocaine in detergent boxes.

During Bentley's testimony, the defendants motioned for a mistrial because they believed the government elicited testimony in violation of the district court's order. The district court denied the motion for a mistrial.

Defendant Cooney testified in her own defense at the trial. She claimed to own a legitimate property management business that required her to have large sums of cash on hand. She also said she never asked anyone to deliver cocaine for her. Defendant Boswell did not testify.

The jury convicted Defendants Cooney and Boswell of all charges. After their convictions, the defendants each moved for a judgment of acquittal, claiming there was insufficient evidence to support their convictions. The district court denied the defendants' motions for judgment of acquittal.

On March 17, 2000, the district court sentenced Cooney to life imprisonment on Counts 1 and 2.480 months of imprisonment on Count 3, and 240 months of imprisonment on counts 14 and 16. The district court sentenced Boswell to 360 months in prison on Counts 1, 2, and 3 and 240 months of imprisonment on Counts 14 and 16. The district court ordered that Defendant Cooney and Boswell's sentences run concurrently.

The defendants raise several issues on appeal. First, Cooney and Boswell say the district court erred by denying their motions to suppress the wiretap evidence and the evidence obtained from the search of the house. Second, the defendants say the district court erred by denying the defendants' motions in limine and motions for mistrial concerning Bentley's testimony. Third, the defendants say the district court erred in denying the defendants' motions for judgment of acquittal.

The defendants also appeal the district court's calculation of their sentences. First, they say the district court erred by determining their base offense level on relevant conduct involving more than 150 kilograms of cocaine. Second, the defendants say the district court erred in assessing each a four level enhancement as a leader or organizer. Third, Defendant Cooney says the district court erred when the district court assessed her a two level enhancement for obstructing justice by testifying untruthfully.

We consider the defendants' appeals below.

## II. Pre–Trial, Trial, and Post–Trial Motions

### A. Motions to Suppress

We review a district court's legal conclusions on suppression issues de novo while we review its factual findings under a clearly erroneous standard. *United States v. Fullerton*, 187 F.3d 587, 590 (6th Cir. 1999); *United States v. Padro*, 52 F.3d 120, 122 (6th Cir.1995).

#### 1. Wiretap evidence

On July 29, 1998, Cooney filed a motion to suppress evidence gathered through the wiretaps on Reese's cell phones. On August 27, 1998, the magistrate judge held a consolidated hearing on motions from several defendants to suppress evidence gathered through the wiretaps. At the end of the hearing, the magistrate judge issued an oral recommendation to deny the motions to suppress.[4]

■ Cooney objected to the recommendation just before trial, almost thirteen months later. A party only has ten days to object to a report and recommendation. 28 U.S.C. § 636(b)(1) (2001). Cooney waived her right to appeal the district court's decision by failing to object in a timely fashion.[5] *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).

■ Defendant Boswell belatedly seeks to join in this issue. He was not a party to the suppression hearing before the district court and presents no argument as to why he should be allowed to appeal the issue. *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir.1996) ("[I]t is a 'settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990)).

■ Furthermore, Boswell did not file a motion to suppress the wiretap evidence until March 8, 2000, three months after the trial. A defendant must make a motion to suppress evidence before trial. Fed. R.Crim.P. 12(b)(3). Defendant Boswell has waived his right to challenge the district court's denial of the motion to suppress the wiretap evidence.

---

4. At the suppression hearing, Cooney's counsel did not have a specific basis for challenging the wiretap evidence.

> Mr. Bailey: In reviewing the application pertaining to the order on behalf of the government, we don't have a good-faith basis to suggest that there wasn't probable cause.
> The Court: If you are not suggesting there was no probable cause, what are you suggesting?
> Mr. Bailey: We still maintain that there was constitutional infringement. We submit it on that basis—our position on that basis. Fourth and Fifth Amendment infringement.
> Mr. Bailey: At this time. Your Honor, we don't have any specific bases on which we can support our contention except to suggest that she had an expectation of privacy which was violated.

> The Court: All right anything further?
> Mr. Bailey: No. Your Honor.
> The Court: Then I'm going to deny Ms Cooney's motion at this time or recommend that it be denied for failure to state a basis in fact of law.

Joint Appendix at 706–07.

5. At the end of the suppression hearing, the magistrate judge reminded the defendants of the objection deadline.

> Now, because I told you I am trying to get out another opinion right now on another case, I am not going to write a written report and recommendation. You will have to ask the court reporter to get the transcript printed up, but the ten days to note your objections to my findings will start today.

Joint Appendix at 731.

■ Even if Defendants Cooney and Boswell had not waived their appeal on this issue, their appeal is without merit. The defendants say the affidavit used to obtain the wiretap did not establish the need for intercepting Reese or Cooney's phones. *See* 18 U.S.C. § 2518(1)(c) (stating an application for a wiretap should include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous").

■ The purpose of the necessity requirement "is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir.1977) (quoting *United States v. Pacheco*, 489 F.2d 554, 565 (5th Cir.1974)). If less intrusive techniques do not suffice to expose the entire criminal conspiracy, then electronic surveillance is warranted. *See United States v. Maxwell*, 25 F.3d 1389, 1394 (8th Cir. 1994). Moreover, "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." *United States v. Steinberg*, 525 F.2d 1126, 1130 (2d Cir.1975).

In the suppression hearing, the magistrate judge specifically found normal techniques of investigation had been insufficient to expose the extent of the conspiracy.[6] The magistrate judge found the evidence presented showing the conventional investigative methods used and the

large number of phone calls between the participants justified electronic surveillance. Joint Appendix at 730.

Furthermore, Defendant Cooney is mistaken when she says the government's affidavit does not show a need to intercept her phone calls. The affidavit never needed to establish a need to intercept Cooney's calls. The government only sought a wiretap on Reese's phones. The law enforcement officers intercepted her conversations because she spoke with Reese on his tapped phone.

The district court correctly denied the defendants' motions to suppress the wiretap evidence.

### 2. Search of the house

On April 8, 1999, the magistrate judge held a hearing on the defendants' motions to suppress the evidence discovered in the search of their house. At the hearing, Special Agent Umphlet testified Cooney was read her rights after Cooney had changed into appropriate clothes. She refused to sign the form acknowledging her rights but did request an attorney. Special Agent Umphlet then read Cooney a consent to search form. Cooney stated "she had nothing to hide" and signed the form. Before the magistrate judge, Detective Medley testified that Cooney orally consented to a search of the house while changing her clothes.

At the suppression hearing, Cooney denied consenting to Detective Medley's request to search the house. Cooney also testified she felt compelled to sign the consent to search form because of the law enforcement officers present.

---

6. The magistrate judge found:
 However, based on the affidavit of Mr. Collins, it does not appear that the government was able to completely identify all the participants in the conspiracy or the level of

participation of the participants. Therefore, in my opinion—and I find that the normal techniques had not been sufficient to expose the entire conspiracy.
Joint Appendix at 729–30.

In his report and recommendation issued at the conclusion of the hearing, the magistrate judge noted that custody alone does not demonstrate that consent to search is coerced. *See* Joint Appendix at 743–44 (citing *United States v. Watson,* 423 U.S. 411, 424–25, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)). The magistrate judge then found by the totality of the circumstances that Cooney voluntarily gave verbal and written consent to search the house. *See* Joint Appendix at 744–47 (citing *United States v. Riascos–Suarez,* 73 F.3d 616, 625 (6th Cir.1996)). The district court adopted the magistrate judge's report and recommendation and denied the defendants' motions to suppress the evidence from the search of the house.

On appeal, the defendants say the district court erred because Cooney's signing of the consent to search form after invoking her right to remain silent is a violation of her Fifth Amendment rights. We disagree.

■ The protections of the Fifth Amendment only apply to incriminating evidence of a testimonial or communicative nature. *See Schmerber v. California,* 384 U.S. 757, 760–61, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The courts that have considered this issue unanimously agree that consenting to a search is not an incriminating statement under the Fifth Amendment because the consent is not evidence of a testimonial or communicative nature. *See United States v. Lewis,* 921 F.2d 1294, 1303 (D.C.Cir.1990); *United States v. Faruolo,* 506 F.2d 490, 495 (2d Cir.1974); *Smith v. Wainwright,* 581 F.2d 1149, 1152 (5th Cir.1978); *United States v. Glenna,* 878 F.2d 967, 971 (7th Cir.1989); *Cody v. Solem,* 755 F.2d 1323, 1330 (8th Cir.1985); *United States v. Lemon,* 550 F.2d 467, 472 (9th Cir.1977); *United States v. Rodriguez–Garcia,* 983 F.2d 1563, 1568 (10th

Cir.1993); *United States v. Hidalgo,* 7 F.3d 1566, 1568 (11th Cir.1993).

■ After hearing testimony from those involved, the magistrate judge found that Cooney voluntarily consented to a search of the house. We see no reason to set aside the factual finding of the magistrate judge. Therefore, we hold that Cooney shows no violation of her Fifth Amendment rights from her voluntary consent to search the house.

The defendants also say Cooney's Sixth Amendment rights were violated when she signed the consent to search form after she was indicted. Once again, we disagree.

■ The right to counsel attaches once an adversary judicial proceeding has been initiated against a defendant. *See, e.g., United States v. Gouveia,* 467 U.S. 180, 187–88, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). An adversary judicial proceeding can be initiated "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* at 188 (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion)). After a defendant's Sixth Amendment right to counsel attaches, he has a right to the advice of counsel "at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The Supreme Court has referred to this stage as a "critical stage" of a criminal proceeding. *See Michigan v. Jackson,* 475 U.S. 625, 632 n. 5, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

■ A defendant's consent to search is not a critical state of the proceedings. *See Hidalgo,* 7 F.3d at 1569–70 (citing *United States v. Kon Yu–Leung,* 910 F.2d 33, 38 (2d Cir.1990)). In *Kon Yu–Leung,* the

Second Circuit reasoned the Sixth Amendment right to counsel does not apply to a consent to search because a search does not generate evidence, but merely reveals evidence "already in existence and virtually certain to be available to the government in due course." *Kon Yu–Leung,* 910 F.2d at 40. In *Hidalgo,* the Eleventh Circuit used the same reasoning to hold that the defendants lack of counsel did not violate his Sixth Amendment rights when he consented to a search of his residence after he had been indicted. *Hidalgo,* 7 F.3d at 1570.

■■■ The current facts are similar to those in *Hidalgo.* Cooney was under indictment when the police went to her house.[7] They read Cooney her rights and she requested counsel. Her voluntary consent to search the house does not implicate her Sixth Amendment rights because the search was not part of the adversary process. If Cooney had not consented to the search, the police could have quickly returned with a search warrant.

Therefore, we hold the district court correctly denied the defendants' motions to suppress evidence taken from Cooney and Boswell's home.

### B. Witness William Bentley's Testimony

At trial, the defendants motioned in limine to exclude William Bentley's testimony. The district court allowed Bentley to testify but limited his testimony to his general relationship with Cooney and his interaction with her in relation to the drug conspiracy charges. During Bentley's testimony, the defendants moved for a mistrial when the government allegedly elicited testimony in violation of the district court's order. The district court denied the defendants' motion for mistrial.

On appeal, the defendants say the district court erred by allowing Bentley to testify he had purchased cocaine from Cooney in the past because the testimony was prejudicial under Fed.R.Evid. 404(b).[8] The defendants also say the district court erred when it denied their motion for a mistrial. We disagree.

We review the district court's admission of testimony or other evidence for an abuse of discretion. *United States v. Bonds,* 12 F.3d 540, 554 (6th Cir.1993). We review a ruling on "other acts" evidence that falls within Rule 404(b) as follows: (1) the factual determination that a prior act occurred is reviewed for clear error; (2) the legal determination that evidence was admitted for a legitimate purpose is reviewed de novo; (3) the determination as to whether the evidence is more probative than prejudicial is reviewed for abuse of discretion. *United States v. Johnson,* 27 F.3d 1186, 1190 (6th Cir.1994). As to the denial of the motion for mistrial, we review the trial court's ruling for an abuse of discretion. *United States v. Forrest,* 17 F.3d 916, 919 (6th Cir.1994).

The district court allowed Bentley's testimony because it held the September 12, 1996, conversation between Cooney and

---

7. On February 27, 1998, Cooney was charged in the first superseding indictment in this case.

8. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowl- edge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed.R.Evid. 404(b)

Bentley about the seized $355,000 was not Rule 404(b) evidence.

With respect to the phone call that was allegedly made by Ms. Cooney to Mr. Bentley after the money had been seized, that appears to me to be a part of this conspiracy and not 404(b) evidence at all. The general information about the relationship between Mr. Bentley and Ms. Cooney, that is, why she would have happened to call him is also not really 404(b) evidence. It's really just evidence to show the nature of the relationship between these two individuals. It's just kind of part and parcel of the reason for which she called him, the basis for the call.

Joint Appendix at 1188. However, the district court limited Bentley's testimony, holding that specific details of past drug dealing and the fact Cooney packaged the cocaine in detergent boxes was not admissible because the potential prejudice outweighed its probative value. Joint Appendix at 1188–89.

▆▆▆▆▆ The district court did not abuse its discretion by allowing Bentley's testimony. We agree that Bentley's testimony concerning Cooney's phone call after the police seized the $355,000 is direct evidence about the drug conspiracy. This testimony is not Rule 404(b) evidence at all. However, we do not agree with the district court's ruling on Bentley's testimony about prior drug dealings with Cooney. That testimony is Rule 404(b) evidence.[9] However, we find this error is without consequence because Bentley's general testimony about his prior dealings with Cooney is admissible under Rule 404(b).

▆▆▆▆▆ A two-step analysis is used to determine whether evidence is admissible under Fed.R.Evid. 404(b). First, the trial court ascertains whether the proffered evidence is relevant and admissible for a proper purpose. *United States v. Feinman,* 930 F.2d 495, 499 (6th Cir.1991). To be relevant, "the evidence must relate to a matter which is 'in issue,' and must deal with conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried." *United States v. Blankenship,* 775 F.2d 735, 739 (6th Cir.1985) (citations omitted). Evidence is admissible for a proper purpose if the evidence is probative of a material issue other than character. *Id.* (citing *Huddleston v. United States,* 485 U.S. 681, 686, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)).

---

9. Rule 404(b) does not apply where the challenged evidence is "inextricably intertwined" with evidence of the crime charged in the indictment. *See United States v. Barnes,* 49 F.3d 1144, 1149 (6th Cir.1995); *United States v. Torres,* 685 F.2d 921, 924 (5th Cir.1982), *see also United States v. DeClue,* 899 F.2d 1465, 1472 (6th Cir.1990) ("Evidence which is probative of the crime charged and does not solely concern uncharged crimes is not 'other crimes' evidence.").

Intrinsic evidence necessary to provide coherence to a parties case is not the type of other acts contemplated by Rule 404(b). *Torres,* 685 F.2d at 924. The U.S. Court of Appeals for the Fifth Circuit gave the following definition of intrinsic evidence:

"Other act" evidence is "intrinsic" when the evidence of the other act and the evidence of the crime charged are "inextricably intertwined" or both acts are part of a "single criminal episode" or the other acts were "necessary preliminaries" to the crime charged.

*United States v. Williams,* 900 F.2d 823, 825 (5th Cir.1990); *see also Barnes,* 49 F.3d at 1149.

Cooney's prior dealings with Bentley explain why she called him after the seizure of the money but they are not inextricably intertwined with the drug conspiracy she is accused of running. Nor is there any other evidence that the prior dealings were part of a single criminal episode. The prior acts at issue merely show that Bentley purchased cocaine from Cooney in the past.

Second, the court must determine whether the probative value of the evidence substantially outweighs the danger of unfair prejudice. *Feinman,* 930 F.2d at 499 (citing *Huddleston,* 485 U.S. at 687).

Bentley's testimony on his prior relationship with Cooney was probative of his identity. The district court found the context of their relationship was necessary to understand why Cooney would call Bentley after the seizure of the money.

■ The district court also limited Bentley's testimony about his prior relationship with Cooney. The district court's ruling ensured that the probative value of Bentley's testimony substantially outweighed any potential prejudice suffered by Cooney and Boswell.

■ Likewise, the district court did not abuse its discretion in denying the motion for mistrial. In deciding a motion for mistrial, the primary concern is fairness to the defendant. *Forrest,* 17 F.3d at 919. The district court restricted Bentley's testimony to the general nature of his relationship with Cooney. The defendants moved for a mistrial after the government asked Bentley the following questions:

Q: Okay. And you were selling cocaine in Macon, Georgia back in 1992 when you were convicted in the state court; is that correct?

A: Correct.

Q: Do you know a person by the name of Patricia Cooney?

Joint Appendix at 1302.

The district court found nothing in the sequence of questions to suggest the government violated its order concerning Bentley's testimony.[10] We agree. The two questions do not suggest a connection between Bentley's earlier drug sales and his knowledge of Cooney.

Furthermore, in an abundance of caution, the district court asked the government to question Bentley about a different subject and return later to Bentley's relationship with Cooney. The government complied with this request.

The district court's decision was safely within its discretion. The defendants received a fair trial. We affirm the district court's denial of the defendants' motion for mistrial.

### C. Sufficiency of the Evidence

After they were found guilty on all counts, Defendants Boswell and Cooney filed motions for judgment of acquittal claiming the government had insufficient evidence to support their convictions. The district court denied both motions.

The standard of review for the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of a crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Forrest,* 17 F.3d at 918. The record indicates there is sufficient evidence to support the defendants' convictions.

■ With respect to the drug charges, Defendants Cooney and Boswell say no rational trier of fact could find them guilty because most of the evidence against them came from the testimony of convicted co-defendants Darren Reese, Lorenzo Hollis,

---

**10.** The defendants objected to the timing of the questions, to which the district court replied:

Only if one is privy to additional information would one think that. It's just as easy

to draw the inference from this transcript that he has concluded one area of questioning and is turning to another.

Joint Appendix at 1303–04.

Marie Hollis, and LaTonia Pope. However, challenging the credibility of a witness merely challenges the quality of the government's evidence, not the sufficiency of the evidence to support a conviction. *See United States v. Latouf,* 132 F.3d 320, 330 (6th Cir.1997).

The record shows that besides the testimony of the co-defendants, the government's evidence included lists of hotel and phone records detailing the coconspirators activities, seized cocaine and money, and the telephone calls intercepted through the wiretaps on Reese's phones. In light of this evidence, a rational trier of fact could easily conclude that there was sufficient evidence to convict Cooney and Boswell of the aiding and abetting the distribution of cocaine and drug conspiracy charges.

■■ Defendant Cooney also says there was insufficient evidence to support her conviction for money laundering and conspiracy to commit money laundering. Specifically, Cooney says the evidence at most shows she sold drugs for cash. She says this evidence does not establish she hid the cash by purchasing assets under false names or used it to purchase more drugs.

Defendant Cooney's argument misstates the government's case against her. The applicable money laundering statute reads as follows:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conducts such a financial transaction which in fact, involves the proceeds of specified unlawful activity-

(A)(i) with the intent to promote the carrying on of specified unlawful activity; ... or

(B) knowing that the transaction is designed in whole or in part-

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law. 18 U.S.C. § 1956.

■■ Therefore, to show a violation under 18 U.S.C. § 1956(a)(1)(A)(i), the government must prove the defendant: (1) conducted a financial transaction involving the proceeds of unlawful activity; (2) knew the property involved was proceeds of unlawful activity; and (3) intended to promote that unlawful activity. *United States v. Haun,* 90 F.3d 1096, 1100 (6th Cir.1996). The delivery or transfer of monies that are the proceeds of an unlawful activity to a courier satisfies the definition of "financial transaction" within the meaning of the money laundering statute. *See United States v. Reed,* 77 F.3d 139, 141–42 (6th Cir.1996).

The government focused its proof on showing that Cooney and Boswell promoted the carrying on of the drug conspiracy. The coconspirators' testimony and phone record evidence produced by the government is sufficient to allow a rational trier of fact to conclude the defendants' intended to carry on their drug conspiracy by using the proceeds of the drugs sold in Memphis. We affirm the district court's denial of the defendants' motions for judgment of acquittal.

### III. Sentencing Issues

#### A. Quantity of Cocaine

When sentencing the defendants on Counts 2 and 3 under 21 U.S.C. § 841(a)(1), the district court found that the defendants were responsible for more than 150 kilograms of cocaine. This amount of cocaine corresponds to a base offense level of 38, the highest level avail-

able under the guidelines. *See* U.S.S.G. § 2D1.1(c) (2000).[11] Using this base offense level, the district court sentenced Cooney to life imprisonment and Boswell to 360 months for their convictions under § 841(a)(1).

On appeal, the defendants' say the district court erred by using the 150 kilogram cocaine amount to sentence them because the jury did not find that amount beyond a reasonable doubt. Because the district court relied on the 150 kilograms of cocaine, the defendants say their sentences were above the statutory maximum in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

*Apprendi* established that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). Under § 841(b)(1)(C) a defendant convicted of distributing any amount of cocaine faces a statutory maximum of twenty years imprisonment. However, under § 841(b)(1)(A), a defendant convicted of distributing more than five kilograms of cocaine faces a statutory maximum of life imprisonment. For Cooney and Boswell's sentences to be greater than twenty years the factual determination of more than five kilograms of cocaine needed to be found by a jury beyond a reasonable doubt. The jury made no such finding in this case.

Because the defendants did not raise their *Apprendi* claims in the district court, we review their claims only for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Page*, 232 F.3d 536, 543 (6th Cir.2000).

We only correct an error under Rule 52(b) if it is "plain" and "clear" under current law and affects a substantial right. *Page*, 232 F.3d at 543 (citing *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). If these conditions are met, we may exercise discretion and notice the error only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Johnson*, 520 U.S. at 467).

The government concedes that the district court's sentences based on its determination of the amount of cocaine were in error under *Apprendi*. *See* Appellee's Final Brief at 49. This fulfills the "plain" and "clear" requirements of our plain error review.

■ An error affects a defendant's substantial rights when the error was prejudicial, that is, when it "affected the outcome of the district court proceedings." *Page*, 232 F.3d at 544 (quoting *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Imposing extra years of imprisonment beyond that authorized by a jury's verdict affects a defendant's substantial rights. *See United States v. Barajas–Nunez*, 91 F.3d 826, 833 (6th Cir.1996). Furthermore, a sentencing error seriously affects the fairness, integrity, or public reputation of judicial proceedings when a court's error results in the imposition of a sentence not authorized by law. *Page*, 232 F.3d at 544 (citing *United States v. Williamson*, 183 F.3d 458, 464 (5th Cir.1999)).

Nonetheless, the government says we should affirm the defendants' sentences because the sentencing error did not prejudice them. Based on their convictions

11. While our citations are to the 2000 edition of the sentencing guidelines manual, Defendants Cooney and Boswell's presentence investigation reports relied upon by the district court were prepared using the 1998 edition. There is no difference between the editions with respect to the sections relevant to this case.

the defendants could have received five consecutive twenty year sentences.[12] The government says there would be no change in defendants' sentences if remanded for resentencing so they cannot show the sentencing error affected their substantial rights or seriously affected the fairness of the judicial proceedings.

We partially agree. There was more than sufficient evidence in the trial record to find the defendants responsible for more than 150 kilograms of cocaine. Therefore, the district court properly arrived at valid sentencing ranges when determining the defendants' sentences. However, the district court erred by exceeding the twenty year statutory maximum when it sentenced Cooney to life imprisonment and Boswell to 360 months on their § 841(a)(1) convictions.

With respect to Boswell, when the highest statutory maximum is less than the total punishment, the sentences imposed on other counts can run consecutively. *See* U.S.S.G. § 5G1.2(d) (2000).[13] The district court could have sentenced Boswell to 240 months on Count 2 and a consecutive sentence of 120 months on Count 3, creating the same result as his current 360 month sentence. We find that the district court's error did not prejudice Boswell because without the error his sentence would have been the same. *See United States v. Page*, 232 F.3d 536, 545 (6th Cir.2000) (finding no prejudice to defendants convicted of multiple counts of conspiracy and

drug distribution when district court sentenced them in violation of *Apprendi* because their sentences would have been the same even without the error). Vacating Defendant Boswell's sentence and remanding his case for resentencing would serve no purpose.

Defendant Cooney's life imprisonment sentence is more troublesome. Unlike Boswell's sentence, we cannot say that if the district court had sentenced her properly the result would be the same as life imprisonment. While a sentence of many years may have an identical effect as a sentence of life imprisonment, the two sentences are different. Therefore, we vacate Defendant Cooney's sentence and remand her case for resentencing.

For the district court to resentence Cooney to life imprisonment under § 841(a)(1) it must impanel a jury and have the jury find the amount of drugs involved beyond a reasonable doubt. Otherwise, the district court may sentence her up to 100 years by giving her a combination of five consecutive and concurrent twenty year sentences.

### B. Sentence Enhancement as a Leader or Organizer

The defendants also appeal the district court's decision to increase their base offense levels by four as leaders or organizers under U.S.S.G. § 3B1.1.[14] Defendant

---

**12.** In addition to Counts 2 and 3 (21 U.S.C. § 841(a)(1)), the defendants' convictions on Count 1 (21 U.S.C. § 846), Count 14 (18 U.S.C. §§ 1956(h)), and Count 16 (18 U.S.C. § 1956(a)) also carry a twenty year statutory maximum.

**13.** (d) If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the

extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

U.S.S.G. § 5G1.2 (2000).

**14.** The applicable language of the sentencing guideline is as follows:

Based on the defendant's role in the offense, increase the offense level as follows:

Cooney says the government has not met its burden of proof to show that she and Boswell were organizers or leaders in the drug conspiracy. Defendant Boswell further says his participation as a mere distributor of cocaine is not enough to support the enhancement.

Whether the defendants were leaders or organizers within the meaning of U.S.S.G. § 3B1.1 is an issue of fact we review for clear error. *See United States v. Garcia,* 19 F.3d 1123, 1125 (6th Cir.1994).

 The various sentencing adjustments under U.S.S.G. § 3B1.1 are designed to punish varying degrees of responsibility. *See* U.S.S.G. § 3B1.1 cmt. background (2000). The guidelines provide a list of factors to consider in assessing a defendant's role in the offense. These factors include: the exercise of decision making authority; the nature of participation in the commission of the offense; the recruitment of accomplices; the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense; the nature and scope of the illegal activity; and the degree of control and authority exercised over others. *See* U.S.S.G. § 3B1.1, cmt. n.4 (2000). These factors guide the sentencing court and are not meant to act as elements that must be met. *See United States v. Ospina,* 18 F.3d 1332, 1337 (6th Cir.1994). Simply buying and selling drugs, without other evidence, is not sufficient to show that a defendant is a leader, organizer, manager, or supervi-

sor. *See United States v. Schultz,* 14 F.3d 1093, 1099 (6th Cir.1994).

 In this case, the government clearly demonstrated that the defendants warranted the upward adjustment. The evidence presented at trial showed the conspiracy involved more than five people and was responsible for moving hundreds of kilograms of cocaine. The government presented evidence that Cooney and Boswell were equally in charge of the Miami end of the operation. Both exercised control over Marie Hollis and Lorenzo Hollis when sending them to Memphis as couriers. Both Cooney and Boswell prepared the cocaine for shipment to Memphis. Finally, both Cooney and Boswell were taped speaking to Reese through the wiretaps on his cellular telephones.

In light of the extensive evidence of the defendants' involvement in the conspiracy, the district court's decision to apply the four level enhancements was not clearly erroneous. The defendants' appeal of their sentence enhancements as leaders or organizers is denied.

### C. Sentence Enhancement for Obstruction of Justice

Defendant Cooney appeals the district court's decision to increase her base offense level by two for obstruction of justice under U.S.S.G. § 3C1.1.[15] Defendant Cooney says this enhancement unfairly chills a defendant's right to testify at trial because the defendant faces an enhancement if the jury does not believe the defendant's testimony.

---

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
U.S.S.G. § 3B1.1 (2000).

**15.** If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the

course of the investigation, prosecution, or sentencing of the instance offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (2000).

Cooney's argument misses the point of the sentence enhancement at issue. The application notes to this guideline specifically identify perjury as conduct appropriate for the enhancement. U.S.S.G. § 3C1.1 cmt. n.4(b) (2000). At the sentencing hearing, the district court found Cooney's testimony at trial to be untruthful:

> This is one of the clearest types of cases in which such an enhancement is appropriate. Quite simply, Ms. Cooney did not tell the truth in many, many respects. She intentionally lied at the trial, the Court finds, based not only on the jury's verdict, but the Court's own independent review of the trial record.

Joint Appendix at 2334. The district court then enumerated several specific instances where Cooney committed perjury.[16] *Id.* at 2334–35.

The district court's finding of obstruction of justice is a factual determination that we review for clear error. *United States v. Eve*, 984 F.2d 701, 703 (6th Cir. 1993). The district court had plenty of evidence available to make this factual determination. There is no basis to disturb the district court's finding on this matter. Cooney's appeal of the district court's application of U.S.S.G. § 3C1.1 is denied.

## IV. Conclusion

The district court erred in sentencing Defendants Cooney and Boswell in excess of the statutory maximum under 21 U.S.C. § 841(a)(1). In Boswell's case, the district court's decision was harmless error. However, we vacate Defendant Cooney's sentence and remand her case for resentencing. We affirm the district court's decision on all other aspects of these appeals.

The judgment of the U.S. District Court for the Western District of Tennessee in case 00–5447 is **AFFIRMED**. The judgment of the U.S. District Court for the Western District of Tennessee in case 00–5441 is **AFFIRMED** in part and **REVERSED** in part. Defendant Cooney's sentence is **VACATED** and her case **REMANDED** for resentencing.

---

16. For example, Cooney denied knowing Darren Reese was a drug dealer and denied giving drugs to Marie or Lorenzo Hollis to deliver to Memphis. Joint Appendix at 2334–35.